# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8897 | **DATE** | 7/3/2002 |
| **CASE TITLE** | Marva P. Cooks vs. John E. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss (10-1) is granted in part and denied in part. Plaintiff's motion for appointment of counsel (8-1) is denied without prejudice. Defendant is directed to file an answer to those allegations that survive its motion within 21 days, on or before July 24, 2002. Case is referred to Magistrate Judge Denlow for settlement conference. Rule 16 conference before this court is set for September 4, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices 2 | |
| | No notices required. | | JUL 0 8 2002 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 7/3/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | ETV | 02 JUL -3 PM 5:09 | ETV | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office FILED | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARVA P. COOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 C 8897 |
| ) | |
| JOHN E. POTTER, in his official ) | Judge Rebecca R. Pallmeyer |
| capacity as Postmaster General of ) | |
| the United States, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED JUL 0 8 2002**

## MEMORANDUM OPINION AND ORDER

On May 27, 1981, Plaintiff Marva Cooks tripped and fell outside of the National Archives and Records Center located at 7358 S. Pulaski in Chicago. Plaintiff suffered a number of minor injuries, as well as a sprained wrist that continued to plague her, despite numerous surgeries, for years after the fall. Employed by the United States Postal Service since 1967, Plaintiff, proceeding pro se, now claims she suffered employment discrimination upon her return to work after the May 1981 incident. Plaintiff further raises several tort claims. Defendant United States Postal Service moves to dismiss the complaint pursuant to Rule 12(b)(1), arguing that her tort claims are preempted by the Postal Reorganization Act and by the Federal Employee Compensation Act, and that her discrimination claims are barred because she failed to timely exhaust her administrative remedies. For the following reasons, Defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff furnished a great deal of detail in her complaint, (more than necessary to survive a 12(b)(6) motion), and all of her well-pleaded allegations will be deemed true. In considering this 12(b)(1) motion, the court may go beyond the face of the pleadings for certain purposes. In her complaint, Cooks alleged that she suffered numerous personal injuries as a result of her fall in front of the National Archives Records center on May 27, 1981. (Complaint ("Compl."), at ¶¶ 1-2.)

Plaintiff, recuperating from surgery on her wrist, was unable to work for approximately ten months and claims that, during her absence, she was "verbally harassed by the Agency to return to work with subtle hints of job loss." (Compl. at ¶¶ 3-6.)

After she obtained a "return to work slip" from her doctor specifying that she should only be assigned to "light duty," Plaintiff returned to work on April 1, 1982. (Compl. at ¶¶ 6-7.) Plaintiff was assigned to work the "Nixie Table," where damaged mail and packages weighing from one ounce to eighty pounds are repaired, weighed, and returned to the distribution system. (Compl. at ¶ 7.) Plaintiff claims that on April 20, 1982, her doctor requested that Plaintiff be placed under a lifting restriction for her right hand of no more than five pounds.[1] (Compl. at ¶ 7.) According to Plaintiff, the Postal Service failed to abide by her medical restrictions despite her complaints to the injury compensation office which, in turn, exacerbated her injuries. (Compl. at ¶ 7.) In March of 1985, Plaintiff again underwent wrist surgery, a procedure she describes as "unsuccessful." (Compl. at ¶ 7.)

Plaintiff filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, for recovery for the injuries she received when she fell in front of the Federal Archives and Records Center.[2] (Compl. at ¶ 8.) Following a bench trial in front of Judge Brian Barnett Duff, the district court entered judgment in favor of Plaintiff for $190,000. (Compl. at ¶ 8; *Cooks v. United States*, 815 F.2d 34 (7th Cir. 1987).) In her complaint, Plaintiff charges that she never received any money from that judgment. The court takes judicial notice of the Seventh Circuit's decision reversing the judgment of the district court, on the ground that the one-half inch defect in the sidewalk was too minor to warrant liability. (Compl. at ¶ 8; *Cooks*, 815 F.2d at 37.)

---

[1] As noted, Plaintiff's detailed complaint provides considerably more information than required by Rule 8. She does not, however, state whether this request was in writing, nor does she identify to whom the request was directed.

[2] The record does not identify when Plaintiff filed this lawsuit.

Plaintiff asserts that the Postal Service "provided [her] with numerous opportunities to receive training for various positions as a rehabilitative employee," but then removed her from these positions with little explanation. (Compl. at ¶ 10.) She alleges, further, that some unidentified supervisors hinted that the changes in her job position may have been prompted by her lawsuit.[3] *Id.* According to Plaintiff, "[t]hese situations continually and consistently affected [her] health, emotional stress and family." (Compl. at ¶ 10.) Although Plaintiff's doctors urged her to have another surgery on her wrist, Plaintiff declined because she could not afford to take time off work, and instead, continued to perform her assigned duties, even those beyond her medical restrictions. (Compl. at ¶ 10.)

Plaintiff suffered a heart attack and was hospitalized in June of 1991. (Compl. at ¶ 10-11.) About one year later, Plaintiff learned that her blood pressure was so high that she needed to take a medical leave from work. (Compl. at ¶ 11.) She did not work from June 29, 1992 through August 1, 1993, during which time, in addition to treating her high blood pressure, Plaintiff underwent another wrist surgery. (Compl. at ¶¶ 11-12.) Plaintiff alleges that while she was away from work, the Postal Service "willfully and intentionally delayed her compensation payments." (Compl. at ¶¶ 13-14.) Plaintiff further alleges that if the Postal Service would have honored her medical restrictions so that her initial wrist injury could have healed properly, she "would not have had a heart attack, two mild strokes, high blood pressure and now deterioration to the left side of [her] body that has ruined [her] life and health for the last 20 years." (Compl. at ¶ 14.) In May of 2000, Plaintiff's doctor advised her to stop working due to her condition, which Plaintiff describes only as her "now permanent disability."[4] (Compl. at ¶ 17.) Plaintiff has been receiving disability

---

[3]   Plaintiff did not explain what a "position as a rehabilitative employee" entailed, nor did she identify the nature of the positions to which she was moved.

[4]   Plaintiff did not explain what her permanent disability was, for example, whether it was brought on by her wrist injury or by her heart and high blood pressure issues. Plaintiff did not
(continued...)

3

benefits since December of 2000. (Compl. at ¶ 17.)

Starting in 1997, Plaintiff filed a number of complaints about her employment with the Postal Service. On July 14, 1997, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor, claiming she suffered discrimination on the basis of her race, sex, and physical disability when she was moved from a limited duty position in Operations Programs Support and returned to her former mail processing position, (Compl. at ¶ 17; Defendant's Memorandum in Support of Motion to Dismiss ("Defendant's Memo") at 2.)[5] Not having resolved this issue through counseling, Plaintiff filed a formal administrative complaint on June 29, 1998 (Administrative Claim No. 4-J-6040156-97), but the Postal Service denied this claim on December 2, 1999. (Compl. at ¶ 17; Defendant's Memo at 2.) Twice in November of 1998, Plaintiff contacted EEO counselors complaining that she suffered discrimination on the basis of her race, gender and physical disability when her job offer was threatened, and her supervisors refused her requests to work on Columbus Day and on Veterans Day, gave her work assignments that exceeded her medical restrictions, and reassigned her from her limited duty job offer to another position. (Defendant's Memo at 3.) Again, these complaints were not resolved through counseling. Plaintiff filed two formal complaints on April 28, 1999 (Administrative Claim Nos. 1J-603-0023-99 and 1J-603-0047-99), and again the Postal Service denied both claims on April 16, 2001. (Compl. at ¶ 17; Defendant's Memo at 3.) Plaintiff appealed that decision on May 16, 2001, but the Office of Federal Operations affirmed the decision on August 15, 2001. (Compl. at ¶ 17; Defendant's Memo at 3.) Plaintiff also sought EEO counseling on September 28, 1999 when she was told she could no longer park in the parking

---

[4](...continued)
identify the doctor who made the recommendation that she stop working.

[5]    Defendant's memorandum attaches copies of the various Notices of Final Action from the Postal Service, and thus, provides additional information concerning the disposition of Plaintiff's administrative charges. The court will consider this additional information as it is relevant to Defendant's 12(b)(1) jurisdictional argument.

spots reserved for the disabled, and later filed a formal complaint on December 27, 1999 (Administrative Claim No. 1J-6060051-00), which was denied on February 27, 2001 by an administrative law judge.[6] (Compl. at ¶ 17; Defendant's Memo at 3-4.) She appealed this decision, but it too was affirmed on March 2, 2001. (Defendant's Memo at 4.)

## DISCUSSION

Plaintiff's complaint does not identify under what legal theory or theories she intends to proceed. With respect to a number of incidents that occurred during her employment with the Postal Service, Plaintiff asserted that "[a]ll of the aforementioned in my complaint are the result of the negligence and discriminatory acts against me by the United States Postal Service." (Compl. at ¶ 18.) As explained below, to the extent Plaintiff raises tort claims against the United States Postal Service, this court does not have jurisdiction. The court has jurisdiction over her employment discrimination claims, but concludes that Plaintiff complied with the administrative exhaustion requirements and time lines with respect to only two of her administrative charges.

**Tort Claims**

The Federal Employees' Compensation Act ("FECA") is the exclusive avenue of redress for a federal worker's claim against the government for work-related injuries. In *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190 (1983), the Supreme Court explained:

> FECA's exclusive-liability provision . . . was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise--the *"quid pro quo"*-- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

460 U.S. at 193-94. Furthermore, it is the Secretary of Labor, rather than a court of law, who

---

[6] It is not clear what prompted the Postal Service to change its position regarding Plaintiff's right to park in the spots reserved for the disabled.

5

decides claims brought under FECA. The Secretary's decisions are final and are not subject to judicial review. See 5 U.S.C. §§ 8128(b), 8145. As a result, to the extent Plaintiff raises personal injury or tort claims against her employer, the United States Postal Service, this court has no jurisdiction to entertain Plaintiff's action, and those claims are accordingly dismissed. See Ezekiel v. Michel, 66 F.3d 894, 898-99 (7th Cir. 1995).

**Discrimination Claims**

Plaintiff also alleges that she was discriminated against by the Postal Service on the basis of her physical disability, gender and race. Because Plaintiff refers broadly to the events surrounding her employment and wrist injury over the past twenty years, it is appropriate to first establish what claims may be considered by this court. First, the court may only consider those discrimination claims that Plaintiff either: (a) pursued first through administrative channels within the Postal Service and raised in an appeal with this court within 90 days of that agency's final decision; or (b) pursued first through administrative channels within the Postal Service, appealed to the Equal Employment Opportunity Commission ("EEOC") following final action by the Postal Service, and then raised in an appeal before this court within ninety days from the date of the EEOC's final decision. See 42 U.S.C. § 2000e-5(f) & 16(c); 42 U.S.C. § 12117(a).

Although Plaintiff filed four separate formal administrative complaints, only two of those complaints are properly before the court for review. Final agency action in Claim 4-J-6040156-97 occurred on December 2, 1999, and in Claim 1J-6060051-00, on March 2, 2001. Plaintiff filed the lawsuit on November 19, 2001, more than ninety days after the final decision on her administrative complaints. Thus, Plaintiff may not appeal the substance of those decisions in this court.

With respect to claims 1J-603-0023-99 ("Claim 23") and 1J-603-0047-99 ("Claim 47"), the Office of Federal Operations affirmed the final decision of the Postal Service denying Plaintiff's claims on August 15, 2001. For purposes of this motion, Defendant presumes Plaintiff did not

6

receive that decision until August 20, (Defendant's Memo at 8). Accordingly, her complaint, filed in this court on November 19, is filed within ninety days of final action on Claims 23 and 47.

A further limitation on this court's review is the scope of the underlying claims. Plaintiff may only bring claims that were included in her original administrative claim, or that are like or reasonably related to, the allegations of the charge or growing out of the charge. *Ferguson v. Runyon*, No. 96-3306, 116 F.3d 1482 (TABLE, text in WESTLAW), 1997 WL 295326 (7th Cir. 1997). Therefore, the court will consider the claims in Plaintiff's complaint, but only if those claims were first presented in Claims 23 and/ or 47.[7] In both the complaint and in Claims 23 and 47, she asserted that she suffered discrimination on the basis of her race, sex, and physical disability.[8] The allegations in her complaint are like or reasonably related to those in the underlying claims, however, only where there is a "factual relationship between [the claims]," meaning that the administrative charge and "the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995), quoted in *Ferguson*, 1997 WL 295326 at *2.

Reading Plaintiff's allegations in the light most favorable to her as the court must on this motion to dismiss, she clearly raised one claim in both the complaint and the administrative claims. Furthermore, the court finds sufficient overlap between another claim in the administrative claims and one in the complaint for her to proceed on that as well. First, both the administrative claims and the complaint, Plaintiff alleged that she suffered discrimination when she was assigned work that exceeded her medical restrictions. Thus, the court may consider that claim. Plaintiff further alleged in both her administrative claims and the complaint, that she suffered discrimination (on the

---

[7] Unfortunately, it is not clear from the record which complaint was assigned which administrative claim number.

[8] Confusing matters slightly, Plaintiff did not identify which actions constituted discrimination on which basis, or whether instead, she meant that each instance of alleged discrimination was on the basis of her race, her sex, *and* her disability.

7

basis of her race, sex, and disability, or all three) when she was reassigned from one position within the Post Office to another. The administrative claim specifies that this occurred on November 2, 1998. Because Plaintiff referred only generally to a job reassignment in the complaint, the court will assume this general reference also relates to the November 2, 1998 incident and permit her to proceed on that claim as well. As for the two other allegations raised in Claims 23 and 47, that she was not allowed to work on two federal holidays, and that her job offer was threatened, Plaintiff makes no reference to those incidents in her complaint and the court concludes that these allegations are not reasonably related to the claims raised in the complaint. Accordingly, two of Plaintiff's claims survive Defendant's motion to dismiss: (1) Defendant assigned her work that exceeded her medical restrictions, and (2) Plaintiff suffered discrimination when she was reassigned to a different task on November 2, 1998.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (10-1) is granted in part and denied in part. Ms. Cooks' tort claims are dismissed. She may proceed with her discrimination claims, but only those claims raised in Claims 23 and 47 as described above. Plaintiff's motion for appointment of counsel (8-1) is denied without prejudice.

ENTER:

Dated: July 3, 2002

REBECCA R. PALLMEYER
United States District Judge